

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

June 10, 1974

The Honorable Robert S. Calvert
Comptroller of Public Accounts
State Finance Building
Austin, Texas

Opinion No. H- 323

Re: Entitlement to gas production
tax refund under Articles 1. 045
and 3. 01, Taxation-General, V. T. C. S.

Dear Mr. Calvert:

Your opinion request requires us to determine whether a particular
gas producer is entitled to a refund of overpayment of the gas production
tax imposed by Article 3. 01, Taxation-General, V. T. C. S. which imposes
a tax on the production of gas equal to 7 1/2% of its market value when
produced.

The Supreme Court has interpreted the term "market value" to
mean the price at which the producer sells his gas. W. R. Davis, Inc.
v. State, 180 S. W. 2d 429 (Tex. 1944). The price at which gas can be
sold in interstate commerce, however, is subject to regulation by the
Federal Power Commission (FPC) under the Federal Natural Gas Act,
15 U. S. C., Sec. 717, et seq. The FPC usually permits a seller of gas
to collect an increased rate as provided in his gas sales contract, but
subject to its final review and approval. Until the rate is fixed by the
FPC, a producer of gas does not know for certain the market value of
his product and, as a result, cannot determine how much production tax
is owed under Article 3. 01.

The Comptroller has solved this problem by requiring producers
to pay the production tax on the basis of the temporary rate permitted by
the FPC subject to later adjustment upon a final determination by that
body. If the FPC subsequently lowers the applicable rate, the tax will
also be lower, and the taxpayer will be entitled to a credit or refund.
If the rate is raised, a tax deficiency results. See Article 1. 11A, Taxation-

General, V. T. C. S. and Attorney General Opinions H-172 (1973) and WW-477 (1958).

Your opinion request concerns the application for refund of an overpayment of the gas production tax submitted by Dorchester Gas Producing Company (Dorchester). From November 7, 1959 to October 1, 1970, Dorchester sold gas to Northern Natural Gas Company (Northern) pursuant to a gas sales agreement between the parties. The rates established in the agreement were collected subject to final approval by the FPC, and they provided the basis upon which Dorchester computed the gas production tax it owed. On September 18, 1970, the FPC issued Opinion No. 586 in which it determined the just and reasonable rates for Dorchester's sale of gas to Northern; this opinion has since been upheld in final appellate proceedings. The opinion reduces the rate that Dorchester can charge Northern for the gas sold during the period in question from that provided in the agreement between the parties and requires Dorchester to refund all amounts collected in excess of the approved rate.

While Dorchester and Northern have computed and reported to the FPC the amount to be refunded, the actual refund has not yet been made. Instead Dorchester and Northern have entered into an "exploration fund agreement" performance by which Dorchester would serve as a substitute for its obligation to make a refund. This agreement has been submitted to the FPC for approval, and it does not become effective until approval is granted.

Under the agreement's terms, Dorchester would retain the amount it is required to refund to Northern and would assume any income tax liability that results. Dorchester would expend this money in a gas exploration and development program subject to Northern's approval. Any gas reserves developed under the program would be owned by Dorchester but dedicated for sale to Northern under contracts reflecting price, quality, and other conditions prevailing at the time of discovery. The price of the gas sold to Northern as a result of the exploration agreement would be discounted in an amount up to 125% of the amount required to be refunded by Dorchester, the discount to be payable solely out of 25% of Dorchester's

net working interest income from the gas dedicated to Northern. The discount would be regularly deducted by Northern from the monthly payments it would make to Dorchester under the applicable contracts. If any of the original refund amount remains unspent at the termination of the exploration agreement, it must be paid directly to Northern. Before the agreement is to become effective, the FPC must approve it, Dorthester must acquire a suitable bond indemnifying Northern against any liability that might result, and Northern must obtain a favorable Internal Revenue Service ruling as to the tax consequences of the agreement.

With reference to Dorchester's application for a refund, you ask four questions. You first ask whether in this situation there has been a "final determination" as referred to in Article 1. 045 (F)(1), Taxation-General, V. T. C. S. , which provides:

> Notwithstanding any provision of any other Article of this Title, when any administrative proceeding before any local, state, or federal regulatory agency or judicial proceeding arising therefrom, results in a final deter-mination which affects the amount of tax liability imposed by any Article of this Title, such final determination shall be reported to the Comptroller within sixty (60) days after becoming final, with a statement of the reasons for the difference in tax liability, in such detail as the Comptroller may require. [ emphasis added]

In Attorney General Opinion H-172 (1973) we said that a final deter-mination in a rate proceeding before the FPC occurs when the amount of refund has been agreed to by the parties and approved by the Commission or, in the absence of agreement, has been ordered by the Commission.

In Dorchester's case the rate it can charge for the gas sold to Northern during the period in question has been established by the FPC in Opinion No. 586, and that opinion has been upheld in final appellate proceedings. Because the rate fixed in the opinion is lower than what was actually charged, Dorchester is required to make a refund to Northern. The parties have agreed upon the amount that must be refunded and the form of payment and, as required by the opinion, have submitted a petition

seeking FPC approval of their agreement.

But the FPC has not yet granted its approval. The opinion states at pgs. 33-34 that any amount to be refunded shall be retained subject to further order of the Commission directing disposition and that the proceedings shall remain open for such further action as may be necessary with respect to individual cases. Thus, while the applicable rate has been finally determined, the amount of refund required of Dorchester and the form of payment have not yet been approved. Until FPC approval is granted, or some other disposition is ordered, we do not believe that a final determination affecting Dorchester's gas production tax liability, as contemplated by Article 1.045, has yet occurred.

Your second question is whether Dorchester would be entitled to a refund of gas production taxes if the exploration agreement is ultimately approved by the FPC. When the contract price charged by a gas producer is denied by the FPC and the producer is required to refund the disallowed portion to its customers, then under Article 1.11A, the production tax paid by reason of the disallowed portion of the contract price should be refunded to the producer or allowed as a credit in subsequent tax reports. You ask whether performance of the gas exploration agreement by Dorchester would have the same tax consequences under Art. 1.11A as would a refund.

Under the terms of the exploration agreement the full amount of the refund will be retained as income by Dorchester. Dorchester will not, however, have unrestricted use of this fund; it will be obligated to expend the money, subject to Northern's approval, in a search for new gas reserves. Any reserves discovered will be owned by Dorchester but dedicated for sale to Northern at a discount.

There can be no doubt that this arrangement will be more beneficial to Dorchester than having to pay the refundable amount directly to Northern. Under it, Dorchester's search for new reserves is subsidized by Northern. At the same time we must assume that the exploration agreement is also of substantial benefit to Northern; otherwise Northern would not have agreed to it in lieu of a direct refund. The agreement provides Northern with an opportunity to secure future supplies of gas at a discount, an opportunity

apparently of considerable value to Northern.

But regardless of which party has the better end of the bargain, it can hardly be argued that approval of the agreement by the FPC would give Dorchester the benefit of the full contract price originally charged Northern and upon which production taxes were paid. Instead FPC approval will further confirm that a portion of the original price has been disallowed and that as a result Dorchester has had to assume new obligations with respect to this money. The gas exploration agreement is in effect simply an alternative method of making the required refund which has been proposed by Dorchester and accepted by Northern. If approved by the FPC, Dorchester will not be relieved of its obligation to make a refund but will be permitted to do so in a manner other than direct repayment. In these circumstances we believe Dorchester would be entitled to a refund of the gas production taxes it paid on the amount charged Northern in excess of the rate fixed by the FPC.

Your third question is whether the taxpayer would still be entitled to a refund of gas production taxes if, in lieu of a direct refund, the FPC approved an exploration agreement similar to that submitted by Dorchester but without the provision for a discount on future sales in the event new production is obtained. The absence of a discount provision would not change the fact that the original contract price has been disallowed by the FPC, that a lower rate has been established, and that as a result the producer/taxpayer is required to refund that portion of the contract price charged in excess of the approved rate. Even without a discount provision, the exploration agreement is nevertheless an alternative method for making the required refund under which the producer loses unrestricted use of the refund amount and assumes substantial new obligations with respect to it. In this situation the amount of the refund can no longer be considered part of the price received for the gas sold and accordingly the taxpayer would be entitled to a refund of the gas production taxes paid on this amount.

Your final question is whether the taxpayer is entitled to a refund of gas production taxes whenever the FPC fixes the rate lower than the contract price even though the taxpayer is never required to make a refund

or do anything else in order to repay the amount overcharged. In this situation, even though a lower rate has been established, the taxpayer has been permitted to retain the full contract price free of restriction. In effect he has been permitted a higher price for the gas sold and therefore should have to pay production taxes calculated on the basis of this higher amount. In our opinion he would not be entitled to a refund. The gas production tax imposed by Article 3.01 is based on the price actually received, not the rates established by the FPC.

## SUMMARY

A final determination in a rate proceeding before the Federal Power Commission occurs when the amount of refund has been agreed to by the parties and approved by the Commission or, in the absence of agreement, has been ordered by the Commission.

A taxpayer is entitled to a refund of gas production taxes if the FPC establishes a rate lower than the contract price and requires him to make a refund of the amount overcharged, even though he is permitted to satisfy this obligation through a gas exploration agreement with or without a discount provision. Article 1.11A, Taxation-General, V. T. C. S.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

_____
LARRY F. YORK, First Assistant

_____
DAVID M. KENDALL, Chairman
Opinion Committee